UNION PACIFIC RAILWAY COMPANY v. REUBEN VINCENT.

FILED FEBRUARY 23, 1899. No. 8719.

1. **Parties: DEFECT: WAIVER.** A railroad company made with two persons a contract, in form joint, for the transportation of horses, a portion of which belonged to one of the shippers and the remainder to the other. None was owned in common. The horses of one were injured, and he sued, naming the other as a defendant because he refused to join as plaintiff. No objection was made for defect of parties until the trial began. *Held,* Without deciding how an action in such case should be brought, that the railroad company could not complain because one of three situations must exist: The suit was sufficiently brought by the person whose stock was injured, as the real party in interest; or else it was sufficient to make the other a defendant alleging that he would not join as plaintiff; or if he must necessarily have joined as plaintiff, the defect appeared on the face of the petition and was waived by not demurring on that ground.

2. ——— : ———; EXPLANATION. Section 42 of the Code of Civil Pro-

cedure, requiring a person who should have been joined as plaintiff, but who refuses, to be made a defendant, the petition stating the reason, requires the reason for not joining him—that is, his refusal—to be stated, and not his reason for such refusal.

3. **Depositions:** EXCEPTIONS. An exception other than for incompetency or irrelevancy, made to a deposition, must be filed before the trial commences, but unless one of the parties so demands, it need not be ruled on prior to the trial.

4. ———: TIME OF FILING. To secure a reversal error must affirmatively appear. Therefore, when it appears that exceptions to depositions were filed the day the trial began, it will not be presumed that they were filed after the commencement of the trial, although it appears they were not called to the attention of the court until jurors had been called into the box.

5. **Common Carriers:** CONTRACTS. In an action on a contract of shipment, not naming the carrier, evidence examined, and *held* to sustain a finding that the defendant was the carrier making the contract.

6. **Pleading:** NEGLIGENCE. A general averment that the defendant was negligent, without setting out the negligent acts or omissions, is sufficient, unless the pleading be attacked by motion.

7. **Review:** OFFER OF PROOF. Assignments of error based on the exclusion of testimony are unavailing, unless when the ruling was made the party complaining made a tender of the proof he expected to elicit.

8. **Common Carriers:** LIMITING LIABILITY. The rules announced in *St. Joseph & G. I. R. Co. v. Palmer*, 38 Neb. 463, and *Atchison, T. & S. F. R. Co. v. Lawler*, 40 Neb. 356, with reference to contracts limiting the liability of common carriers, reaffirmed.

ERROR from the district court of Gage county. Tried below before LETTON, J. *Affirmed.*

*W. R. Kelley* and *E. P. Smith*, for plaintiff in error.

*A. Hazlett* and *F. N. Prout, contra.*

IRVINE, C.

Reuben Vincent began this action against the Union Pacific Railway Company and Lafayette Simpson, alleging that the Union Pacific Railway Company was a common carrier from Beatrice, in this state, to Portland, Oregon, and contracted with Vincent and Simpson to

safely carry a car load of horses from Beatrice to Olympia, Washington; that in said car were nineteen horses, ten of which belonged to plaintiff in severalty and nine to Simpson; that in transit, and at a point in Idaho, certain of plaintiff's horses were injured and one was killed by the negligence of defendant company in handling its train; that Simpson refused to join as a plaintiff and was therefore made a defendant. Damages were sought because of the injury to plaintiff's horses. Plaintiff had judgment and the railway company brings the case here for review.

The defendant company urges as a ground of reversal that the contract of shipment was a joint contract of Simpson and Vincent, and that they should have joined as plaintiffs. This point was raised by objection to the introduction of evidence and otherwise during the trial. The case is in this aspect certainly unusual. It appears from the petition itself that the contract was made with both Simpson and Vincent; that no horses were by them owned in common, but some belonged to one and the rest to the other. A recovery is sought for injury to those belonging to Vincent alone. We need not consider what is the correct practice in such case. There are only three possible views of the law, and according to any one the railroad company cannot now complain. It might perhaps be said that as the Code of Civil Procedure requires an action to be brought in the name of the real party in interest, and as that party has been defined to be the person entitled to the avails of the action (*Gerner v. Church*, 43 Neb. 690; *Kinsella v. Sharp*, 47 Neb. 664), the action might properly be brought by Vincent alone. Again, it might be claimed, as is claimed in argument, that the defendant is entitled to have all the parties to the contract in court, to avoid a splitting of causes and multiplicity of actions. If so, the case would seem to fall within section 42 of the Code, which provides that "if the consent of one who should have been joined as plaintiff cannot be obtained, he may be made a defend-

ant, the reason being stated in the petition." Such was
the course here taken. It is said that the reason was not
here so stated, but we take it that what the statute de-
mands is that the reason for not joining such person as
plaintiff be stated—that is, that he refuses to join; not
the reason for his refusal, which he is not obliged to
give, and which the plaintiff has no means of ascertain-
ing and often cannot state. It is said in the briefs that
no service was had on Simpson, and that he had not ap-
peared prior to the making of the objection. There is
nothing in the record to show that there had been no
service on Simpson, and immediately after the interposi-
tion of the objection and ruling thereon Mr. Hazlett en-
tered his appearance for Simpson. Thus, if the ruling
was, when made, erroneous, it was, as the event showed,
without prejudice, because Simpson did appear and was
bound by the judgment. It is argued that because Mr.
Hazlett appeared for the plaintiff the usual presumption
of authority will not be indulged to appear for a de-
fendant. There is shown nothing antagonistic in the in-
terests of Simpson and Vincent, so that one man might
not represent both, and we must presume that Mr. Haz-
lett entered his appearance in pursuance of authority and
with regard to his duties as an officer of the court. But
a third view is presented, which is that in such a case,
an action on a contract, in form joint, section 42, above
referred to, cannot apply, and that it is essential that
all joining on one side of the contract shall join as plain-
tiffs to the action. If that were true, which we do not
decide, the defect of parties plaintiff appeared on the face
of the petition, and not having been raised by demurrer
on that ground, was waived. (Code of Civil Procedure,
secs. 94, 96.)

Error is assigned on the suppressing of a deposition
which the defendant company had taken, and which was,
although it had been suppressed, offered on the trial and
excluded. The special ground of this assignment is that
the exception to the deposition was not made and filed

before the commencement of the trial. The record does not affirmatively disclose a violation of section 390 of the Code, which requires exceptions other than for incompetency or irrelevancy to be made and filed before the commencement of the trial. The motion to suppress was filed the day the trial began, but from the transcript it would appear that it was made and ruled on before the jury was impaneled. From the bill of exceptions it would seem that it was called to the attention of the court after some jurors had been called into the box but before the jury was impaneled. By section 391 of the Code it is only when one of the parties so demands that exceptions to depositions must be decided before the trial commences, otherwise it is sufficient if they be filed before the trial. Therefore we need not determine whether the trial begins, as defendant contends, when parties announce themselves ready, or whether only after the jury is sworn, as plaintiff argues. A judgment will not be reversed unless error affirmatively appears, and as the inference from the record is that the motion was filed before the trial, although on the same day, we cannot say there was error in ruling thereon after some jurors were in the box. What would be the rights of a litigant who suffered such a ruling by reason of a motion unreasonably delayed, as to securing a continuance, are not here presented, because the defendant suggested no surprise or unreadiness and asked no postponement after the deposition was suppressed.

The evidence shows that the horses were shipped from Beatrice to Olympia; that from Beatrice to Valley extends a line of road owned by the Omaha & Republican Valley Railway Company; that it there connects with the line of the Union Pacific Railway Company; that at Granger, Wyoming, there diverges from the latter line that of the Oregon Short Line & Utah Northern; that these were the lines of shipment, and that the horses were injured in Idaho, on the line of the Oregon Short Line & Utah Northern. The shipment was a through

shipment, and the bill of lading so provided. The Union Pacific Company denied that it had made the contract or undertaken the transportation of the horses except as an intermediate carrier between the Omaha & Republican Valley and the Oregon Short Line. This made the principal issue of fact, and was by the jury, under instructions not complained of except as unfounded on the evidence, determined in favor of plaintiff. Ordinarily, the railroad undertaking the shipment is named in the contract, but here the contract is very peculiar. It is headed "Union Pacific System," and also bears at the top the words "Union Pacific, the Overland Route." It is dated "Beatrice Station," and begins, "This agreement, entered into on the day above stated, between the company controlling and operating the line at and from said station." Thus the question of fact seems to be what was the company, not owning, but controlling and operating, the line at Beatrice. An effort was made to show that the Omaha & Republican Valley Railway Company was a distinct corporation, owning, controlling, and operating the line from Beatrice to Valley, and that the Union Pacific had no control over either that line or the Oregon Short Line, so that it neither contracted to transport the horses to Olympia nor were they injured on its line. It was, however, shown that the Union Pacific owned the greater part of the stock of the Omaha road; that all three lines already named were operated under the name of Union Pacific System; that while they had separate officers, the same men occupied corresponding offices for each company; that the general offices were the same, although separate books were kept at the same desks, and there were many minor details disclosed indicating that there was such a close communion of interests and management as to indicate that all three lines were operated by a single concern, and that was the defendant company. Thus it was shown that in 1893 all the lines passed under the control of the same receivers in a single action. The general manager for these re-

ceivers testified as follows: "Do you know how the Union Pacific System handles the Omaha & Republican Valley Railway Company's lines? I believe I do. By what authority? By authority given them by the board of directors of the Omaha & Republican Valley line, I presume." By the testimony of another witness it is shown that the Union Pacific System was a somewhat informal consolidation of various companies, all more or less under the control already of the Union Pacific Company. While there was an attempt to show that "Union Pacific System" was merely a name, a "trade-mark," as witnesses styled it, it is impossible to understand how a trade-mark can, with or without authority, manage and control a railroad. There is ample in the evidence to support the theory that the scheme was devised, to use a homely expression, for the purpose of hitting if it was a deer and missing if it was a calf, and to warrant the conclusion reached by the jury that in this instance the calf had been struck.

It is said that there was no sufficient averment of negligence. Assuming that it was necessary to aver and prove negligence in such a case, it was here sufficiently averred by a general charge that the company negligently handled the car containing the horses in giving momentum to its train, so that the horses were injured. While the nature of the negligence should be pleaded, a general averment is sufficient, unless the pleading be attacked by motion. (Omaha & R. V. R. Co. v. Wright, 49 Neb. 456.) It is said that the petition shows that the horses were injured in giving momentum to the train, and that this being a necessary act, it could not have been negligently done; but the averment was that the act was performed in a negligent manner. It is argued that there was no evidence of negligence, but we are satisfied that the evidence was on this point sufficient to go to the jury, again assuming that it was necessary to prove negligence.

Several assignments of error relate to the exclusion of

evidence offered by the defendant, chiefly bearing on the *quantum* of damages. We cannot reach the merits of these assignments, because in no case was there made a tender of the proof. This, by an uninterrupted course of decisions, is necessary to preserve for review a ruling excluding proof.

The contract of shipment contained restrictions and limitations upon the liability .of the company, both as to the amount of damages recoverable and the liability for any damage. It is unnecessary to set these out. They have all been passed upon in former cases. It is argued that these restrictions are not contrary to the law of the state, and if they are, that the state law is not here applicable, because the shipment was of an interstate character, and subject to. regulation by congress alone. Every phase of this argument has been met and determined adversely to the defendant in *St. Joseph & G. I. R. Co. v. Palmer*, 38 Neb. 463, and *Atchison, T. & S. F. R. Co. v. Lawler*, 40 Neb. 356. It would be useless to renew the discussion or restate the particular questions.

Some other specific assignments of error are relied on, but they have been directly or logically disposed of by what has been already said.

AFFIRMED.