GEORGE FRIEDERICH, APPELLANT, V. HENRY C. KLISE, APPELLEE.

FILED JANUARY 30, 1914. No. 17,381.

1. **Negligence: FIRES: TRACTION-ENGINE.** One who threshes grain by means of power communicated to the threshing-machine from a steam traction-engine should, in respect to the setting of fires,

Friederich v. Klise.

exercise a degree of care and prudence commensurate with the danger to which farm property is exposed by him in the lawful conduct of his business as such thresher.

2. ———: ———: ———: EVIDENCE. Where in such case a screen called a spark-arrester is placed over the top of the smoke-stack for the purpose of preventing the escape of sparks and fire, it should be frequently and vigilantly examined for the purpose of seeing whether it is in good repair and with the view to keeping it in that condition. Where such spark-arrester is found in a defective condition a few minutes after the fire occurred so that the fire might have originated therefrom, and there is evidence tending to prove that the fire which occasioned the damage was communicated from the engine, such evidence, if not controverted, will sustain a charge of negligence in the operation of such engine.

3. ———: ———: ———: BURDEN OF PROOF. Where the defendant, who was engaged in threshing grain for the plaintiff, used a traction-engine which furnished power to run the grain separator, and there was evidence which tended to show that the spark-arrester which covered the top of the smoke-stack was in a defective condition so that fire and sparks might escape therefrom, and it was further shown that the engine was placed near the grain stacks containing the grain to be threshed, and that the wind was blowing from the engine toward the stacks at the time the engine was running, and that the stacks caught fire and were destroyed, such facts establish a presumption of negligence, and cast upon the defendant the burden of establishing, as an affirmative defense, that the engine was not faulty in construction, and was, at the time of the fire, properly equipped, in good repair, and properly operated; and the jury should have been so instructed.

4. ———: ———: ———. Before starting in to do the job, it was the duty of the defendant to see that the engine was properly equipped with a spark-arrester then in a state of repair sufficient to answer the purpose for which it was intended, so far as the same might be practicable.

APPEAL from the district court for Pierce county: ANSON A. WELCH, JUDGE. *Reversed.*

*H. C. Brome, Clinton Brome* and *W. C. Fraser,* for appellant.

*C. H. Stewart* and *M. H. Leamy,* contra.

HAMER, J.

This case involves the consideration of an appeal by the plaintiff from the judgment of the district court for Pierce county. The plaintiff sued to recover damages sustained by reason of the burning of six stacks of oats and incidental injury connected with the loss. The full damage sought to be recovered was $800 claimed to be sustained by reason of the negligence of the defendant in the careless handling and management of his traction-engine while threshing grain for the plaintiff. It is alleged that the threshing outfit came upon the premises in pursuance of an oral contract with the plaintiff, and that the threshing-machine was set near the six stacks of oats which were destroyed by fire from the engine; that the engine did not have upon the smoke-stack a proper or suitable spark-arrester; that the spark-arrester had become out of repair and was broken and injured to such an extent that it was no longer suitable or effective for the purpose intended; that its defective condition was known to the defendant or could have been known to him by the use of ordinary care and diligence; that prior to the time the damages were sustained by the plaintiff the defendant and his agents negligently permitted the said traction engine to become unsafe and dangerous with respect to the escape of fire and sparks and with full knowledge of said condition; that said condition was unknown to the plaintiff until after the burning of the stacks; that said damages or any part thereof were in no manner contributed to, or caused by, the plaintiff, but were the sole result of the defendant's negligence; that the defendant with full knowledge of the defective condition of the said engine set the same within 10 or 12 feet of the grain stacks and to the windward of the same so that the fire and sparks escaping from the engine fell immediately upon said stacks.

The defendant answered, admitting that he was the owner of the threshing outfit, and stating that the position which the engine occupied was the only one in which it could be placed and operated on account of the position

of the grain stacks and their nearness to each other; that the plaintiff was present and saw the position and location of the engine and offered no objection to the same, but permitted and ordered the defendant to start the engine and proceed with the threshing; that if sparks of fire escaped from the engine, as alleged in the petition, it was owing to the fact that the plaintiff, contrary to the express order and direction of the engineer operating the said engine, provided said engine with a kind and quality of coal which, when burned in any engine, would form into small particles and most likely cause the escaping of fire sparks. The reply was a general denial.

The question to be determined is whether the defendant, under the facts alleged and shown by the evidence, was guilty of negligence.

It is contended by the plaintiff that the true rule to be applied to this thresher is the same rule that this court has applied in measuring the responsibility of railroad companies regarding the escape of fire from locomotive-engines; that the rule is that, when it is established that sparks escaping from a locomotive-engine have originated the fire, then the law puts upon the railroad company the burden of proving that its engine was properly constructed and operated, and that it was in good condition; and it is further said that the law does not permit the owner of the locomotive-engine to escape liability if the spark-arrester be broken or defective by showing that the defective condition of the spark-arrester had not been discovered or was not known.

It is said in the brief of plaintiff that the rule that imposes upon the railroad company the absolute duty of keeping its engines in repair to the end that fire may not escape therefrom ought not to be relaxed when the court is dealing with the engine used to propel a threshing-machine; that the engine for threshing is generally operated at a place where much combustible material is located, and that the danger of fire caused by escaping sparks is much greater than in the case of the use of the locomotive-engine. And it is contended that because of this difference

there ought to be a greater degree of care required in the
case of the threshing-machine than in the case of the loco-
motive-engine. The defendant contended that it was im-
material whether the spark-arrester was in proper repair
or not at the time the fire originated; that as a matter of
fact the defendant was not liable because the spark-arres-
ter was defective and fire originated therefrom, unless he
*actually knew* of the defect, or unless a jury should find
from the evidence that the defect had existed so long that
he *ought to have known it*. The district court took the
view that was favorable to the contention of the defend-
ant and instructed the jury upon that theory. The ver-
dict and judgment were against the plaintiff, and be-
cause, as it is claimed, of this error in the instructions.
The following instructions were given:

"No. 4. If you are satisfied by a preponderance of the
evidence that the fire originated from the engine, as claimed
by plaintiff, then the burden of proof is upon the defendant
to remove a presumption, though small indeed, of negli-
gence, to show you that the engine of the defendant from
which fire escaped was provided with a spark-arrester, to
prevent the escape of fire, which was suitable, in good order,
and properly constructed, or that defendant, or his agents
and employees, were not negligent in failing to discover
its defective condition in order to prevent the same, and,
if you so find, then it is your duty to find for the defend-
ant, as defendant would not be liable if there was used a
proper and suitable spark-arrester, in good order, and it
was carefully handled and managed by the servants of de-
fendant; unless the jury believe the defendant, or his
employees, were guilty of actual negligence in not know-
ing of a defect therein, if there was any such defect."

"No. 1. Notwithstanding the fact that the jury may
believe from the evidence that the spark-arrester which
was on the smoke-stack of defendant's engine was in fact
defective, at the time of the starting of the fire complain-
ed of by the plaintiff herein, yet this alone would not be
sufficient evidence of negligence on the part of the de-
fendant to entitle the plaintiff to recover therein. In

Friederich v. Klise.

order to charge the defendant with negligence, it must appear from the evidence, not only that the spark-arrester was defective at the time said fire was started, but it must further appear that such defect was actually known to the defendant, or his agents or employees in charge of said engine, or it must appear from the evidence that such defect had actually existed for such a length of time before the said fire that defendant or his employees would or should have known of such defect, had he exercised ordinary diligence and caution. And if you find from the evidence that neither the defendant nor his servants who were in charge of his engine at the time in question knew that there was a defect in the spark-arrester on said engine, and you further find from the evidence that such defect had not in fact existed for a length of time sufficient to charge the defendant or said servants with knowledge of the same, then your verdict should be for the defendant."

The stacks stood three on a side. The separator was placed in the vacant space between the two rows of stacks. It was between the first two in the rows. The engine was to the south of the stacks. The wind was from the south, or perhaps slightly from the southwest. The owner of the stacks seems to have made no objection to the position of the machine or the engine. This is urged as a justification by the defendant. The machine had only been running 10 or 15 minutes when the fire was discovered. It was then climbing the southeast stack and was half way up to the top. There was also a fire in a bundle on the ground by the stack. There were holes in the old screen, and it was repaired about a week before the fire by putting on a new top. Immediately after the fire there was a hole in the screen three or four inches long and an inch wide. There seems to be no dispute about this. The wire seems to have been pulled from between the parts intended to hold it together. The top had been covered with a new screen, which Henry Klise, one of the defendant's sons, testified was put on the week before. All the witnesses testified to the size of this hole in the screen.

It was abundantly large to allow sparks and "trash" on fire to escape. One witness testified he could put his hand in the hole, and another said four fingers. Herbert Friederich testified that he put his hand through this hole. George Friederich testified that he noticed the engine imediately after the fire started and saw that the spark-arrester let a lot of "trash" through the wire. The gist of the plaintiff's charge is that the defendant, with full knowledge of the defective condition of the spark-arrester, or having the opportunity to acquire such knowledge by the exercise of ordinary care and diligence, yet neglecting so to do, set the engine to the windward of the grain stacks and within 10 or 12 feet of the same, so that fire and sparks escaping from the engine by reason of the defective condition of the spark-arrester fell upon the stacks, set them on fire, and destroyed them, without any fault upon the part of the plaintiff.

It is contended by the plaintiff that the defective condition of the spark-arrester was fully known to the defendant, or that it could have been known to him by the exercise of ordinary care and diligence, and therefore that he is liable. As to the actual fact of whether the defendant *did know*, Herbert Friederich, the plaintiff's son, and Martha Friederich, plaintiff's wife, both testified to a conversation at the dinner table between the engineer in charge of the engine and the defendant's son just before the machine was set up at the stacks. The latter two denied the conversation. The defendant also produced evidence tending to show that the engineer and fireman examined the spark-arrester every morning, and that such an examination was made on the morning of the fire.

Whether the same degree of diligence should be required of one who operates a threshing-machine as of the railroad company which operates a locomotive-engine need not necessarily be determined in this case. It may be remarked, however, that the threshing-engine is likely to be surrounded by more combustible material than the locomotive, and this may make its position and operation more dangerous. This court may not have established a

precise rule determining the degree of negligence which makes the operator of a threshing-machine liable. When such a rule is established, it would seem that it ought to be a reasonable rule calculated to furnish reasonable protection to the owner of grain and farm premises, and that the care required of those in charge of the machine should be commensurate with the danger. The instructions quoted seem to contemplate that, when the engine was brought to the stack-yard, the spark-arrester was out of repair, or may have been out of repair, and that such fact might be excused by the failure of the defendant to examine it and so to have knowledge of its condition. Vigilance is expected of the man in charge of the machine because the consequences of his negligence may be most disastrous. The instructions do not put the burden where it belongs. The instructions are wrong.

In *Rogers v. Kansas City & O. R. Co.*, 52 Neb. 86, this court held: "The rule in this state is that, when fire is set out by sparks from a passing engine, negligence may be inferred, and that the burden of proof is upon the company to establish that the engine was not faulty in construction, and was properly equipped and operated." This case follows the former case of *Burlington & M. R. R. Co. v. Westover*, 4 Neb. 268. In the case first cited an extra went over the defendant's road at about the rate of 25 miles an hour, and immediately after the engine passed, the fire which occasioned the damages, started near the edge of the grass and spread rapidly and burned to within a few rods of the plaintiff's house. There had been no other fire in the vicinity that spring. In that case there was a directed verdict, and the court held that the verdict and judgment should be set aside and the proofs submitted to the jury for their consideration and under proper instructions.

"The law imposes upon the company and its employees the duty of keeping a vigilant, careful watch to see that the engine is kept in proper repair, * * * and unless the defendant has shown, by a preponderance of evidence, that the engine in question was in such good repair and

condition at the time of the injury complained of, or that all reasonable precautions had been taken to have it in such repair and condition, then the defendant has not rebutted such *prima facie* case made against it." 2 Sackett, (Brickwood) Instructions to Juries (3d ed.) sec. 1988. *Chicago & A. R. Co. v. Quaintance,* 58 Ill. 389.

In *Bradley v. Chicago, B. & Q. R. Co.,* 90 Neb. 28, the court held: "It is the duty of a railroad company to equip its locomotive-engines with such appliances for the control of sparks as the progress of science and improvement demonstrate are the best for that purpose, and which are generally known, or should be known, by those in control of the construction and repair of its engines." In the body of the opinion it is said: "If, at the time the fire escaped from the engine, the locomotive was equipped with the best or most improved appliances that were known, or that should have been known, by the defendant, and in general practical use under such circumstances as surrounded the particular locomotive, and these appliances were in good repair, the defendant was not guilty of negligence in the matter of that equipment"—citing authorities. The court then say: "The evidence is uncontradicted that at the time the plaintiff's barn was destroyed the locomotive was thus equipped. The assignment must, therefore, be overruled." In that case the judgment of the railroad company was affirmed.

In *Kelsey v. Chicago & N. W. R. Co.,* 1 S. Dak. 80, the court held: "If a damaging fire is shown to have been propagated by sparks or fire from a locomotive engine of a passing railroad train of a chartered company, such proof raises a presumption of negligence upon the part of the company, so as to cast the burden of proof upon it of showing that the locomotive engine was properly constructed and managed at the time of the fire." In the body of the opinion it is said: "The rule of the English courts and of many of the American states is that the burden of making this proof rests upon the company (citing cases). The law upon the subject is that the companies, in the construction of their engines, are bound not only to

employ all due care and skill for the prevention of mischief arising to the property of others by the emission of sparks or any other cause, but they are also bound to avail themselves of all discoveries which science has put within their reach for that purpose, provided they are such as, under the circumstances, it is reasonable to require of companies to adopt. The reason given for requiring the companies to show that this duty has been performed on their part is that the agents and employees of the road know, or at least are bound to know, that the engine is properly equipped to prevent fire escaping, and that they know whether any mechanical contrivances were employed for that purpose, and, if so, what was their character." Further discussing the case, the court said: "The plaintiff, by proving that the defendant's locomotive-engine had set fire to dry grass or other combustible matter along its road-bed, made a *prima facie* case of negligence; and, had defendant failed to introduce any proof, the plaintiff would have been entitled to a verdict in his favor under the direction of the court."

In *Grand Trunk R. Co. v. Richardson*, 91 U. S. 459, the action was brought against the railroad company by the defendants in error to recover damages for the destruction of their sawmill, store, lumber and boarding house. It was held in the syllabus: "The determination of an issue, as to whether the destruction of property by fire communicated by a locomotive was the result of negligence on the part of a railroad company, depends upon the facts shown as to whether or not it used such caution and diligence as the circumstances of the case demanded or prudent men ordinarily exercise, and not upon the usual conduct of other companies in the vicinity." It is said in the body of the opinion: "The issue to be determined was, whether the defendant had been guilty of negligence; that is, whether it had failed to exercise that caution and diligence which the circumstances demanded, and which prudent men ordinarily exercise." In that case there was a statute (Gen. St. Vt. 1870, ch. 28, sec. 78) providing that the "corporation shall be responsible in damages for

such injury, unless they shall show that they have used all due caution and diligence, and employed suitable expedients to prevent such injury."

In *Martin v. McCrary,* 115 Tenn. 316, it was held: "Persons engaged in a lawful business and using therein a dangerous instrumentality, such as a steam-engine in threshing wheat, are required to use that degree of care and prudence commensurate with the danger to which property is exposed by them in the lawful conduct of their business." In that case it was also held that the operators of the machine were guilty of negligence if they failed to make at least a daily inspection of the same. There was the usual spark-arrester, but in addition to that there was a "fine inner netting." This was resupplied from time to time. It had been replaced three times prior to the date of the fire. There was testimony that the spark-arrester had been examined a day and a half before the fire occurred, and that at that time there was no hole in either the inner netting or in the spark-arrester proper. The case was tried to the court without a jury. The trial court found that the defendants were not negligent in the operation of the engine and that the accident was not a result of negligence. The reviewing court set aside the judgment of the lower court and rendered a judgment for the amount of the damages claimed. In that case it is said: "It was not sufficient for the defendants to show that neither they nor their servants had knowledge of the hole in the netting. They had the means of knowledge, and should have used those means."

When they started in to thresh, the hole which let the fire out was probably in the spark-arrester. It was there 10 or 15 minutes afterwards. If the defendant had made an examination, then, before beginning to thresh, he would probably have discovered the hole, mended the screen, and saved the loss. We are of the opinion that, immediately before starting in to thresh, the operator of the machine, after he reached the stack-yard, should have examined the spark-arrester for the purpose of ascertaining whether it was in good repair. The instructions com-

plained of probably suggested to the jury a way by which they might avoid rendering a verdict against the defendant. We regard these instructions as highly prejudicial.

The judgment of the district court is

REVERSED.

BARNES, LETTON and ROSE, JJ., not sitting.

SEDGWICK, J. I think that the syllabus states the law of the case, and that the conclusion is right, and therefore I concur.