ALVIN BEHRENS, APPELLANT, V. ROBERT GOTTULA, APPELLEE.

69 N. W. 2d 384

Filed March 11, 1955. No. 33677.

*John E. Mekota,* for appellant.

*Sackett, Brewster & Sackett,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

The plaintiff, Alvin Behrens, brought this action at law in the district court for Gage County against defendant, Robert Gottula, to recover damages for destruction of the plaintiff's property by fire alleged to have been caused by the defendant's negligent opera-

tion of a defective motor while shelling corn for the plaintiff. At the conclusion of all of the evidence offered by the plaintiff, the defendant moved the court for a directed verdict or, in the alternative, that the jury be dismissed and the court render judgment in favor of the defendant. The court dismissed the jury and rendered judgment in favor of the defendant. The plaintiff filed a motion for new trial. From the overruling of this motion, the plaintiff perfected appeal to this court.

For convenience we will hereafter refer to the parties as they were designated in the district court.

The plaintiff's petition alleged in substance that on October 22, 1952, the plaintiff employed the defendant to shell corn for the plaintiff. On the same day the defendant drove his truck onto the farm occupied by the plaintiff in Gage County. The defendant used the motor of his truck as motive power for a corn sheller mounted thereon. The truck had a cracked manifold and an exhaust pipe which was broken off about 3 feet from the motor, which facts were known to the defendant. The plaintiff further alleged that the defendant negligently carried insufficient water in the radiator of the truck, causing the same to heat unduly and emit sparks from the cracked manifold and from the exhaust pipe; and that notwithstanding that the defendant was aware of the defective and dangerous condition of the motor, he negligently operated the same on the premises causing corn husks and plaintiff's personal property to catch fire from the unduly heated motor and the sparks emanating from the exhaust pipe and the manifold. The fire burned personal property belonging to the plaintiff for which loss he prayed damages.

The defendant's answer was a general denial of the allegations set forth in the plaintiff's petition; specifically denied that the defendant operated the motor of the truck or the corn sheller attached thereto in any careless or negligent manner whatever; further spe-

cifically denied that the operation of the truck, its motor, or the corn sheller attached thereto in any way caused or contributed to causing the fire complained of in the plaintiff's petition; and alleged that if the plaintiff sustained any loss or damage as alleged in his petition the same resulted from causes and conditions independent of any act or omission on the part of the defendant. Defendant prayed that the plaintiff's cause of action be dismissed.

Before setting forth the evidence, we deem the following to be pertinent: A motion for a directed verdict or its equivalent must be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed, and such party is entitled to have every controverted fact resolved in his favor and have the benefit of every inference that can reasonably be deduced from the evidence. See Peake v. Omaha Cold Storage Co., 158 Neb. 676, 64 N. W. 2d 470.

The defendant, called as a witness for the plaintiff, testified that he owned a 1939 International truck with a corn sheller mounted on the truck and used the motor of the truck to operate the corn sheller. The manifold was attached to the motor on the right side, and the exhaust pipe came out of the manifold about 7 feet 4 inches where it turned up. The exhaust pipe was disconnected and had been disconnected for about a year. There was a crack about 2½ inches long running around the middle of the manifold, and this crack was less than ⅛ of an inch wide and was barely noticeable. It was not possible to see through this crack.

The brother of the plaintiff testified that he examined the manifold on the truck about a week after the fire and saw a crack in it approximately a quarter of an inch wide which ran crosswise, and was just to the rear of the center of the exhaust manifold.

A general repair mechanic of tractors and trucks testified that a muffler on a truck or a motor vehicle

serves many purposes; and that it is used to muffle the sound, to create a vacuum to draw the burned gases out, and to cool the gases before they go out into the open air. As to the effect of escaping gases if the muffler was disconnected as in the instant case and the gases were permitted to escape without going through the muffler, he testified that without hitting the muffler the burning gases would be exposed. In other words, it would be more like a torch at the end of the exhaust pipe. This would not be visible in the daytime, but would be visible at night. He further testified that he was familiar with the 1939 International truck upon which there is a manifold. As to the manifold, he testified that it is a housing or a funnel to funnel the burning gases from the motor through the pipe out into the open air. He was asked: "Q. Assuming in the manifold on this 1939 International motor truck you had a crack extending around the manifold in about the center or a little to the rear of the center, a crack about a quarter of an inch wide, do you know what effect that would have on the escaping gases? A. Well, it would probably, sparks would come out of that crack. Q. What kind of sparks? A. They are red hot carbon."

The wife of the plaintiff testified that the corn shelling started about 1:30 p. m., and about a quarter to 4 p. m., she took a lunch out to the men. The house was 150 feet northeast of the corncrib, and the barn was straight south of the corncrib. The garage was north of the barn. The corn sheller was between the corncrib and the barn, headed south. When she took the lunch out the men assembled, and the defendant was the last to come for the lunch. The men had taken their sandwiches and she was pouring coffee when she looked up and saw a fire underneath the cab of the truck. The truck was burning, as were corn husks under the truck. The motor of the truck had been shut off a minute or two before she noticed the

fire. When she noticed the fire, she said to the defendant: "Bob, your truck is afire." She testified that they tried to put the fire out, and endeavored to get the truck moved out first. She left to telephone for the fire department. When she returned, the barn, garage, chicken house, hay, and corn were on fire.

The defendant testified that the water in the radiator was not low at the time of the fire. After the fire the water was low because the radiator hose had a hole burned in it. When they moved the truck the right front tire was on fire.

The plaintiff testified that he was a tenant on a farm located northeast of Adams. He located the buildings on the farm in close proximity to the place where the shelling operation was being carried on which was between the corncrib and the barn. He further testified that on October 22, 1952, the defendant, employed by him, was carrying on the corn-shelling operation. The plaintiff and Clink Shoemaker, who came with the defendant, were in the corncrib. There was a hole in the corncrib into which the defendant placed the feeder of the sheller. Corn was fed into the feeder by shovel. The feeder had a drag chain which dragged the corn into the sheller, then from the sheller the shelled corn was put into a steel bin through a pipe. He further testified that his father and John Brinkman were also there, and that Brinkman left prior to the fire. There is evidence that while some of the men smoked, there was no smoking by any of the men prior to or at the time of the fire. It was a nice, bright, sunshiny, and clear day, and there had been no rain for some time. The wind was blowing a little from the southwest. It was not what is called a "stiff" wind. The blower on the corn sheller was directed to the west but not against the wind. When this witness noticed the fire he was 15 feet from the truck on the west side of the corncrib with his lunch, and all of the men were pretty close together. When he first noticed the fire, husks were burning

underneath the cab of the truck. He had no occasion to look to see how many husks were under the truck. He did not notice anything unusual about the operation of the sheller. He supposed the truck motor was shut off. The motor was not running at that time. He did not know who turned the motor of the truck off. He also saw smoke coming from underneath the hood of the truck, and he noticed after they pulled the truck away that the tire on the right front side had caught fire. At that time the defendant poured water onto the motor. The hood of the truck was up. This witness then described the loss occasioned by the fire.

The plaintiff assigns as error that the trial court erred in sustaining a motion for a directed verdict or in the alternative to dismiss the plaintiff's cause of action, and in rendering judgment in favor of the defendant and against the plaintiff.

The defendant relies on the case of Ellis v. Union P. R. R. Co., 148 Neb. 515, 27 N. W. 2d 921, and other cases claiming that it is well settled that a plaintiff is only entitled to recover, in an action for damages predicated on negligence, by proof of one or more of the specific acts of negligence alleged in his complaint, and that a failure to make such proof will defeat his right of action, no matter what other acts of negligence are disclosed by the evidence.

In the instant case, as we view the plaintiff's petition, we deem the following to be applicable. In Pulliam v. Miller, 108 Neb. 442, 187 N. W. 925, it is said: "Where a petition charges specific grounds of negligence as a basis for recovery, and also contains a general allegation of negligence on the part of the defendant in causing the damage, and where no motion for a more specific statement is filed, it is competent under the general allegation of negligence to offer evidence of any fact which contributed to the injury." See, also, Omaha & R. V. Ry. Co. v. Wright, 49 Neb. 456, 68 N. W. 618; Omaha & R. V. Ry. Co. v. Crow, 54 Neb. 747, 74 N. W.

1066, 69 Am. S. R. 741; Union P. Ry. Co. v. Vincent, 58 Neb. 171, 78 N. W. 457; Chicago, R. I. & P. Ry. Co. v. O'Donnell, 72 Neb. 900, 101 N. W. 1009.

No motion was made to make the petition more definite and certain, and a general allegation of negligence must be held sufficient. Union P. Ry. Co. v. Vincent, *supra.*

A general averment of negligence is sufficient unless attacked by motion, and an issue framed by a traverse of such averment may be proved by evidence of any act within the general averment. See Omaha & R. V. Ry. Co. v. Crow, *supra.*

We conclude that the contention of the defendant cannot be sustained.

Negligence in starting a fire and the origin of the fire may be proved by circumstantial evidence. In Kearney County v. Chicago, B. & Q. Ry. Co., 76 Neb. 861, 108 N. W. 131, it was held, in an action for damages for negligently setting out a fire, the origin of the fire may be proved by circumstantial evidence. See, also, Union P. Ry. Co. v. Keller, 36 Neb. 189, 54 N. W. 420; Friederich v. Klise, 95 Neb. 244, 145 N. W. 353.

In Finkelston v. Chicago, M. & St. P. Ry. Co., 94 Wis. 270, 68 N. W. 1005, the court said that obviously it was no objection that the origin of the fire was not established by direct evidence, and if such an occurrence was within reason, then it was a question for the jury to say whether the fire was so caused or not.

It is sufficient if all the facts and circumstances in evidence fairly warrant the conclusion that the fire did not originate from some other cause, and the origin of a fire has generally been held sufficiently established by inferences drawn from circumstantial evidence. See 22 Am. Jur., Fires, § 87, p. 653.

In the instant case there is no other theory offered by the defendant as to how the fire started. No other fire was known to be near the place where the corn-shelling operation was being carried on. We think there

were sufficient facts proved to carry the case to the jury both on the defendant's knowledge of the defective condition of his motor and truck, and also his negligence in the operation thereof. In this connection, the following is applicable.

In a jury case where different minds may draw different conclusions or inferences from the adduced evidence, or if there is a conflict in the evidence, the matter at issue must be submitted to the jury. See, Clouse v. St. Paul Fire & Marine Ins. Co., 152 Neb. 230, 40 N. W. 2d 820, 15 A. L. R. 2d 1008; Snyder v. Farmers Irr. Dist., 157 Neb. 771, 61 N. W. 2d 557.

For the reasons given herein, the judgment of the trial court is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.