F. W. FITCH v. EUCLID MARTIN, AMINISTRATOR.

FILED OCTOBER 5, 1905.   No. 13,937.

1. **Contract: CONTINUANCE OF SERVICES.** If a contract of employment by the year has been entered into for a definite period, continued service of the same nature rendered from year to year after this period has expired, without any other contract being shown, will be presumed to have been performed under the original contract.

2. **Evidence: COPY OF ACCOUNT.** An admission by a deceased person that an account kept in a certain book is correct is not sufficient to warrant the admission in evidence of a copy of this account in another book.

3. **Verdict: EVIDENCE.** A verdict will not be set aside on the ground of want of sufficient evidence to support it, unless the want is so great as to show that the verdict is manifestly wrong.

4. **Witness: COMPETENCY.** A person who has filed a claim against the estate of a deceased person for legal services performed under a yearly contract is not incompetent to testify as to certain independent acts which he performed when the deceased had no personal connection with the act, and as to which the deceased did not participate.

ERROR to the district court for Douglas county: EDMUND M. BARTLETT, JUDGE.   *Reversed.*

'A'. S. *Churchill,* for plaintiff in error.

*F. H. Gaines* and *E. R. Duffie, contra.*

LETTON, C.

In September, 1902, Robert Major, who was a resident of Douglas county, Nebraska, died testate in South Carolina.

Euclid Martin was appointed administrator of his estate. A claim was filed by F. W. Fitch in the county court for Douglas county, alleging that the deceased was indebted to him on account of professional services rendered by him as an attorney at law, under a parol contract entered into in October, 1893, for the employment of Fitch at the yearly salary of $500, and alleging that on or about the 1st day of January, 1895, it was agreed between them that the compensation should be $400 a year instead of $500. The claimant further alleges that services were performed under said contract during each year down to the death of Major on September 13, 1902; the payment of a part of the amount claimed in the lifetime of Major, and that the sum of $3,450 is owing on said contract from the estate of the deceased to the plaintiff. The administrator answered, denying every allegation in the plaintiff's petition, alleging a settlement during Major's lifetime, pleading that all claims for services rendered more than four years before the claim was filed are barred by the statute of limitation, and specifically denying that any services were rendered after October, 1898. The reply denies the settlement, and denies payment, except so far as stated in the petition. Upon the trial, after the evidence of both parties had been produced, the district court instructed the jury to return a verdict for the defendant, which was done, and judgment was rendered dismissing plaintiff's cause of action. A number of errors are assigned, but it will only be necessary to consider a few.

The first error assigned is that the court erred in sustaining objections made to a question asked the witness Karbach. Karbach had testified that in October, 1893, he heard a conversation between Major and Fitch concerning the making of a contract for the employment of Fitch. He was then asked what that conversation was; to which objection was made as immaterial and irrelevant, and for the further reason that any contract made at that time would be barred by the statute of limitations. The objection was sustained, and exception taken. Plaintiff,

however, did not make any offer to prove the facts which were sought to be elicited by the question, hence is in no position to complain of this ruling. *Alter v. Covey,* 45 Neb. 508. We may say, however, that we think the evidence sought was proper, since, even if a contract had been entered into for employment by the year at a time beyond the period limited by the statute in which recovery for services might be had, evidence of continued service of this same nature from year to year, without any other contract being shown, will be presumed to be under the original contract, and it is proper to receive such evidence to furnish the foundation of the plaintiff's claim. *Kellogg v. Citizens Ins. Co.,* 94 Wis. 554, 69 N. W. 362; *Tatterson v. Suffolk Mfg. Co.,* 106 Mass. 56; *Tallon v. Grand Portage Copper Mining Co.,* 55 Mich. 147; *Sines v. Superintendents of the Poor for Wayne County,* 58 Mich. 503, 25 N. W. 485; *Dickinson v. Norwegian Plow Co.,* 101 Wis. 157, 76 N. W. 1108.

It is next urged that the court erred in sustaining the objection to exhibit numbered 2. Exhibit numbered 2 is a book which contains a number of pages of charges against Major made by Fitch from November, 1892, to June, 1902; the first entries being charges for specific services rendered, and the remaining pages apparently being memoranda of professional services performed each year, with a charge of $400 for each year up to the time of Major's death. Mrs. Dunham, who was Fitch's stenographer, testifies that Fitch kept this book for Major; that she remembers the first time that Major went over the account he said to Fitch he would like to have him make a copy of it, so that he could have it to take with him whenever he wanted it; that Fitch gave the book to Major, and that Major took it away, and then afterwards brought it back; that he had it once or twice; that when Fitch did not have the book Major had it. It is not contended that Major ever made an admission of the correctness of the entries in this book, but it is urged that it is a copy of another record which was introduced in evidence; that Major agreed to the correctness of the entries in this other account book, and that consequently

this was an admission of the account in this book, and made it competent evidence as an admission. These facts, if true, would entitle the other account to be admitted in evidence, which was done, but furnish no ground for the admission of a copy of that account. The fact that the witness does not testify that any objection or complaint was ever made by Major in her hearing to the entries in this book does not amount to the dignity of an admission by Major that the charges therein made against him were correct, and we think that the ruling of the court was proper when it excluded this evidence.

The principal error complained of is that the trial court erred in directing the jury to return a verdict for the defendant. To determine this point requires an examination of the evidence. It appears from the evidence that Major and Fitch, prior to the time that they lived in Omaha, had both lived in Atlantic, Iowa; that Major, while living in Atlantic, was a man of family, engaged in the lumber and building material business; that he was worth at that time from $50,000 to $70,000; that afterwards his wife died, and he moved to Omaha, where he lived alone. Fitch testifies that Major was worth about $50,000 when he came to Omaha. Major obtained employment in the postoffice, and was apparently classed as a jaintor, though the work he did was more in the nature of being custodian of certain post office supplies. Charles Karbach testifies that he first knew Major in October, 1893; that Fitch's office at that time was on the fourth floor of the Karbach Block, of which the witness had charge; that Major used to go frequently to Fitch's office, averaging two or three calls a week for ten years; that in 1894 he heard a conversation between Major and Fitch with reference to Fitch's employment as 'attorney; that in that conversation Fitch wanted to charge Major $500 a year for services, but Major objected, and that they finally agreed that it should be $500 up to the next year and $400 a year from then on. He says that after that he was frequently in Fitch's office when Major was talking with Fitch about lands or the

examination of title; that at one time Major went away and was gone for some time, and that after he came back he would be up there two, three or four times a week. He says that in 1896 he saw a note given by one Page turned over to Fitch by Major, and that Major told Fitch to collect the note and take his fees out of it. John A. Meyer, who was the janitor in the Karbach Block, says that he was working on the elevator in 1898; that Major came to see Fitch sometimes every day, sometimes twice a day and sometimes he would not see him oftener than twice a week. Mrs. Dunham testifies that she began to work for Fitch as his stenographer in 1898, and worked for him in 1901; that she first saw Major at Fitch's office in November, 1898, and at that time Fitch was looking up taxes and abstracts and deeds to real estate for Major; that one day she heard a conversation between a man named Siltz and Major with reference to some property; that Siltz made a remark which she did not hear, but she heard Major say in reply: "No, I am paying Fitch $400 a year for my work, and it is right that he should do this." She further testifies that she has seen Major and Fitch go over their book account in the book marked exhibit numbered 1 on pages 77 and 78; that after they had been looking over the account together in December, 1898, Fitch collected some money for Major; that Major paid Fitch $50 of it, and told him to give him credit for that on his account. She further testifies that she heard a conversation in which Major gave Fitch the Page note, but that Fitch did not get the money on this note, and he gave it back to Major, and Major told him to charge it up to his account; that he expected some money pretty soon from his brother's estate, and he would settle up with Fitch; that Major went south about the first of July, 1899, was gone until November, 1900, and that Major wrote Fitch while he was gone. She testifies, further, as to several trips made by Fitch for Major. On cross-examination as to the account she testifies that Major wanted to see it, and said that as far as he knew everything appeared all right. She could not say,

however, whether it was on page 77 or some other page, but knows it was in the same book. John P. Finley, who had an office in the Karbach Block, testifies that he knew of Fitch doing business for Major; that he saw Major in Fitch's office frequently. Robert Herrick testifies that before Major received his inheritance from his brother he owned a number of vacant lots and other property that was of no great value; that from 1894 on Major was buying and selling property and trading; that he was in Herrick's office nearly every day for two years; that he looked up titles and abstracts for him, and that he now has a claim against the estate for this work; that Major did a good deal of outside business that he did not know anything about; that in 1899 Major received property from his brother's estate. The witness testifies that he learned from Major that Fitch had this claim against him; that he learned this before Major went south and before he inherited this money. W. R. Buck was acquainted with Fitch and Major, and testifies that at one time he showed Major some property which he was trying to sell him; that he told Major he would furnish an abstract, and let his attorney look it over and see whether it was all right or not; and that Major said that Fitch looked after his abstract business and all that kind of thing—all his transactions. This was in October or November, 1901. He testifies, further, that he had often seen Major in Fitch's office, and other witnesses testify that they often saw Major and Fitch together at Fitch's office. Mr. Hutchison testifies that he had known Major for 27 years; that in the last part of 1898 he tried to sell Major a house and lot adjoining his own; that he had a conversation with him in regard to selling the property, and that in the course of the conversation Major said that he was paying Fitch $400 a year to do his business. This witness came from the same place as Fitch and Major, had known Fitch since he was a boy, and knew Major as a lumber dealer in Atlantic. He said he would often find Major in Fitch's office. Exhibit numbered 1, which was admitted in evi-

dence, consists of two pages of a book of account. The entries from 1894 to 1902, inclusive, consist of one entry for each year in the form of a summary of services performed, with a single charge of $400 for each year's services. The defendant introduced evidence to show that Major left a large number of papers among his effects, in none of which was there any reference to Fitch or anything whatever regarding Fitch. The administrator testifies that Fitch came to him and told him that if he was employed as attorney for the estate he would present no claim, but this is denied by Fitch. Other testimony was introduced tending to prove that up to the time that Major received the property from his brother's estate he had very little property, mostly vacant lots or wild lands in western Nebraska, all of which was of little value; that he was employed in the post office during all this time, and that it was necessary for him to be there practically all the time that the post office was open. Certain other evidence was received as to whether the books of account offered at this trial were introduced in evidence in the county court at the hearing before the county judge. As to this there was a conflict of testimony.

The administrator urges that, this being a claim against the estate of a deceased person, it should be carefully scrutinized and only admitted upon very satisfactory proof, and that there is no satisfactory proof whatever of a single service rendered the deceased by the claimant as his attorney during the entire period he asserts his employment continued. In this connection his counsel have ably discussed in the briefs and oral argument the weight and credibility of the evidence, have pointed out inconsistencies between the testimony of the witnesses Karbach and Mrs. Dunham, and have called the attention of the court to the improbability of other facts which have been testified to by the plaintiff's witnesses. These considerations were proper to have been urged to a jury, and might have great weight in affecting the minds of the jurors as to the justness of the claim. Granting, however, all that has

been urged in this connection, the fact remains that there is evidence which tends at least to support a part of plaintiff's case. We have testimony that a contract was made between Major and Fitch for legal services to be performed for an annual compensation of $400. We have testimony that Fitch performed some services; that Major told several parties that Fitch was his attorney and attended to his business, and one witness testifies that Major told him he was paying Fitch $400 a year to act as his attorney. It is true there are inconsistencies between the stories of different witnesses, and that there may be considerable doubt as to certain of the facts testified to, when we take into consideration Major's circumstances. But, even as to Major's financial condition during the years prior to the receipt of the inheritance from his brother, there is a conflict in the evidence, and the whole matter was one for the jury to determine, and not for the court. We think that in the laudable zeal of the trial court to preserve the deceased's estate it overlooked the principle that questions of fact are for the jury, and that, if the testimony upon the part of the plaintiff alone, viewed in the light most favorable to him, would support a verdict, he is entitled to have the whole matter submitted to a jury. While the evidence is not free from doubt, we cannot say that it would not support a verdict. Counsel for the administrator, if the case were submitted to a jury, would be entitled to present to that body as forcibly and clearly the objections to the weight and credibility of the evidence as they have done in their brief and argument before this court, and there is no reason to suppose that they would not receive proper and due consideration.

Error is assigned on account of the exclusion by the court of the testimony of Fitch with reference to what he did concerning the examination of title to certain property belonging to the deceased; and also as to the exclusion of evidence showing that Fitch made several journeys to different localities for the purpose of examining into the title to lands situated there; also as to whether

or not he examined certain abstracts. All this testimony was objected to and excluded upon the ground that it involved a personal transaction with the deceased. The question is whether this testimony is a "transaction" between the deceased person and the witness. We have said that the word "transaction," as used in the code, embraces every variety of affairs the subject of negotiations, actions or contracts between the parties. *Smith v. Perry*, 52 Neb. 738. The witness Fitch did not testify that any contract was ever entered into between him and the deceased with reference to his employment as counsel or attorney, and the matters which it was sought to elicit by this proffered testimony were independent facts, which, standing alone, would have no probative value in the case. The fact that the plaintiff made a trip to Atlantic, Iowa, or that he examined a certain abstract, if unaccompanied by any testimony on his part that this was done in consequence of a contract of employment with the deceased or at the deceased's request, would not be a transaction with the deceased. The testimony might corroborate the evidence given by other witnesses as to the existence of a transaction, but it would not be evidence of the transaction itself. To illustrate: A contractor might agree to build a house for a person who afterwards died. After the house was built and the death of the person with whom he contracted, the builder could not testify as to the making of any contract or agreement with reference to the building of the house, but there is nothing in the statute which would prevent him from testifying that he actually built a house upon a certain lot of ground. Unless this evidence was connected with the deceased by the testimony of other witnesses showing that the house was built upon this ground at the request of or with the knowledge of the deceased, no recovery could be had. The testimony of the contractor that the house was built would not be proof of a transaction with the deceased and would not be incompetent under the rule.

In the case of *Lerche v. Brasher*, 104 N. Y. 157, 10 N. E.

58, the court held, in an action against an executor by an attorney to recover for services rendered his testator, where the employment has been competently proved, the plaintiff may describe the things which he did, provided such acts were done in the absence of the deceased and without his immediate or personal participation, and the deceased, if living, could not, for that reason, contradict such testimony. In that case the attorney was permitted to testify that he went to an office and got the papers in a case in which deceased was a party, and went to Albany to prepare the case with another attorney for the court of appeals. The court was of the opinion that these were independent facts in which the deceased was not personally a participator, and which, if living, he could not for that reason have contradicted. They might have been done without his authority or knowledge, and did not necessarily involve a personal transaction with him. And so, in this case, any examination of title by Fitch or jour neys to other points made by him upon business, the nature of which is shown to be connected with the deceased's affairs and as to which the deceased did not personally participate, are proper to be admitted in evidence as inde pendent facts. The line, however, should be carefully drawn by the trial court, so that the protection thrown around the estate of deceased persons by the statute may be preserved, and yet the rights of the living be not interfered with. Where the act was one with which the deceased had no personal connection so far as disclosed by the evidence of the interested witness, it is admissible, if it tends to establish the truth of the claim he makes; but, if any act or conversation of the deceased is involved, the statute excludes it.

Under these considerations, we recommend that the judgment of the district court be reversed.

AMES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

REVERSED.