MARY HLAVATY, APPELLEE, v. RHODA M. BLAIR, APPELLANT.

FILED JUNE 2, 1917. No. 19565.

1. Fraud: MISLEADING REPRESENTATIONS. Representations made by one party to a contract in such terms as would naturally lead the other party to suppose the existence of a certain state of facts, or representations which he knows have led the other party to suppose the existence of a certain state of facts, if made designedly and fraudulently, are as much fraudulent misrepresentations as if statements of untrue facts were made in express terms.

2. Witnesses: COMPETENCY: TRANSACTION WITH DECEDENT. A transaction or conversation within the meaning of section 7894, Rev. St. 1913, is an action participated in by witness and decedent and to which, if alive, decedent could testify of his personal knowledge.

APPEAL from the district court for Richardson county: JOHN B. RAPER, JUDGE. *Affirmed.*

*A. M. Post,* for appellant.

*C. Petrus Peterson* and *R. W. De Voe, contra.*

CORNISH, J.

This is an action for rescission and reconveyance of lands exchanged, on the ground of false and fraudulent representations made by defendant's intestate as follows: That the land was free of all incumbrances; that the water rights appurtenant to the land had been paid in full, so that nothing was owing for water rights, or would be in the future; that the land was worth $150 an acre; and that he paid $9,000 for it. There was testimony of witnesses as to representations as follows: Mrs. R. W.

Holmes: "He (Mr. Blair) said he paid $150 an acre for it (the land), the water rights were paid, and she (Mrs. Hlavaty) wouldn't have to pay anything, (except) for what water she used during the year, and to pay the taxes." S. B. Iiams: "He insisted there was no bonded indebtedness and the water rights were paid for, I wanted to go out at that time, I wanted to start that evening, but he insisted his physical condition was such he could not and would not transact any business." Plaintiff, a native of Bohemia: "He did, he thought he did, I understood it was all paid for is what he told me, I don't need to pay nothing at all, just the water I used was all."

While defendant admits the land was represented as worth $150 an acre and free from liens, she denies the making of representations in the language sworn to. We are of opinion that the evidence shows that representations, substantially as above quoted, were made. The facts are that, within a month after the trade was made, plaintiff discovered that there were outstanding and unpaid bonds of the Otero Irrigation District, which included this 80 acres, in the sum of $777,500, with an assessed acreage of the district of 19,365 acres; that Blair had paid for the land $6,500, but had put improvements thereon, making the investment amount to about $9,000. The case turns upon the question whether, such being the representations and the facts, plaintiff was entitled to a rescission; the representations being made to induce the trade, and plaintiff having relied upon them to her injury.

It is defendant's contention that the water rights were, in fact, paid for by the bonds issued; that the bonds being municipal securities, like courthouse bonds, not a specific lien or incumbrance upon the land, the statements were in no event untrue or fraudulent. We are of opinion that this contention is erroneous. Even though we eliminate the statements sworn to by the witness Iiams, as to there being no bonded indebtedness, the natural import of the representations made would lead the plaintiff, or other ordinary person, to believe that she was getting the water

rights appurtenant to the land free of all expense, direct
or indirect, to her, except what would be necessary for an-
nual dues for maintenance, according to water used. In
short the cost of water rights, though evidenced by bonds,
and not a specific lien upon the land, was not, in fact, paid
for. Each acre of the land had yet to pay its proportionate
share as the money would be collected through taxation.
The defendant's intestate could not have been ignorant
of the fact that plaintiff wished to know how the value
of the land she was getting was affected by the water rights
appurtenant thereto, and that she was relying upon him
for information. Plaintiff, under the circumstances
shown by the evidence, was not bound to make an inde-
pendent investigation. Even if the representations had
been limited to a statement that there were no liens or in-
cumbrances upon the land, as contended by defendant, yet,
if at the time plaintff was inquiring about the water
rights appurtenant to the land she used language indicat-
ing to him that she understood that anything, still to be
paid on account of the original cost of the water right,
would be an incumbrance, then such a representation upon
his part, tending as he would know, to mislead her, would
amount to fraud and misrepresentation. 1 Bigelow, Law
of Fraud, p. 5; 2 Pomeroy, Equity Jurisprudence (3d ed.)
secs. 808, 873. But the representations went farther than
a mere statement as to liens and incumbrances.

It is urged that there is no competent evidence of *reli-
ance* upon any statement of deceased. It is said: "Re-
liance in this case upon the alleged false statement in-
volved a mental process known to appellee alone." This
comes near being true in any case, and by this argument
it might follow that death of one, closing the mouth of
both parties to the transaction, would prevent rescission
for fraud in all cases. The general test is that such wit-
nesses may testify to matters where the decedent, if alive,
could not testify of his personal knowledge to the contrary.
Certainly a state of mind, independent of the communica-
tion had between the witness and the deceased, is not open

to the objection. Such would be testimony that she made no inquiries of other persons touching the character of the land or water rights appurtenant thereto; that, outside of anything Mr. Blair may have said to her, she did not know there were any bonds against the irrigation district where the land was situated; and that she believed any statements made by Mr. Blair to be true.

We are of opinion that the evidence is ample to show that she traded for the land, relying upon her belief that there would be no charge, directly or indirectly, for water rights.

AFFIRMED.