GLEN T. GIBSON, ADMINISTRATOR, APPELLEE, v. MARY J. SHEEN, APPELLANT.

FILED APRIL 11, 1935. No. 29178.

*Nye & Nye,* for appellant.
*Miller & Blackledge, contra.*

Heard before Goss, C. J., Rose, Good, Eberly, Day, Paine and Carter, JJ.

Paine, J.

This is an action to foreclose a mortgage upon an undivided one-sixth interest in the northwest quarter of section 6, township 8, range 10, Adams county, Nebraska.

Mike Sheen and Mary J. Sheen, his wife, had been farm tenants for many years of Chester Holloway near Gibbon, Nebraska, and were indebted to him for a large amount of back rent. On March 1, 1927, the tenants gave to their landlord a promissory note for the amount due of $1,176, with 8 per cent. interest. In this note there was the usual married woman's clause, binding the wife's individual estate for the payment thereof, and the mortgage accompanying the same conveyed as security therefor Mrs. Sheen's one-sixth interest in a piece of land which she had inherited from her parents. Her father died many years before, and her mother died some two years before the trial. At the time of the trial, both Mike Sheen and Chester Holloway, payee, had died, and the petition was filed by the administrator of the estate of Chester Holloway to foreclose the mortgage because of default in the payment of the note.

The answer admitted the signatures of Mike Sheen and Mary J. Sheen, and that nothing had been paid on the note. As a defense to the payment, it alleged that defendant was a married woman, wife of Mike Sheen, who died October 9, 1932, and alleged that she was illiterate, not being able to either read or write, and only just able to sign her name; that she only understood the commonest kind of household words; that she remembered signing some papers, but did not understand that they had any reference to her separate property; that no one explained to her the terms and conditions of either the note or mortgage, and that she could not read them, and alleged that Chester Holloway intentionally and fraudulently misrepresented the true nature and meaning of the papers, with the intent to cheat and defraud her; that what she

understood was that she was signing a new lease of the farm they rented from Holloway. She alleged that she received no consideration for signing the note and mortgage, and that she would not have signed them had she known that they referred to her separate property; and that her mother, Mary Jay, was the owner of the south half of the said northwest quarter of section 6 when the papers were signed, and that the defendant had no right, title, or interest in the land at the time of the execution of the note and mortgage.

For a reply the plaintiff denied all allegations in the answer inconsistent with the petition, and alleged that, if she was not the owner at the time of signing the mortgage, she is estopped to deny that she now has legal title thereto.

The trial court entered a decree foreclosing the one-sixth interest in defendant's land. Defendant brings the decree to this court, and sets up as grounds for reversal that the court erred in overruling the motion to dismiss the action of plaintiff at the close of the plaintiff's evidence; that the court erred in not permitting the defendant to testify that Chester Holloway, payee in the note and mortgage, told her just before she signed the note and mortgage that she was signing a lease on the farm where they were then residing, and that the court erred in finding that the note was binding upon the defendant, who was not indebted in any way to the payee, Chester Holloway, and that she signed said note as surety only, without any consideration.

The defendant's counsel made many attempts to introduce statements made by the deceased landlord which induced the defendant to sign the note and mortgage, but upon objections by plaintiff, which were all sustained by the court, the defendant was not allowed to testify to any fact about the signing of the note and mortgage on the objection of the plaintiff that under section 20-1202, Comp. St. 1929, it would be testimony relating to a transaction with the deceased landlord.

Defendant relies upon the case of *Hlavaty v. Blair*, 101

Neb. 414, in which a portion of the text reads as follows: "It is urged that there is no competent evidence of *reliance* upon any statement of deceased. It is said: 'Reliance in this case upon the alleged false statement involved a mental process known to appellee alone.' This comes near being true in any case, and by this argument it might follow that death of one, closing the mouth of both parties to the transaction, would prevent rescission for fraud in all cases. The general test is that such witnesses may testify to matters where the decedent, if alive, could not testify of his personal knowledge to the contrary. Certainly a state of mind, independent of the communication had between the witness and the deceased, is not open to the objection. Such would be testimony that she made no inquiries of other persons touching the character of the land or water rights appurtenant thereto; that, outside of anything Mr. Blair may have said to her, she did not know there were any bonds against the irrigation district where the land was situated; and that she believed any statements made by Mr. Blair to be true."

However, in the instant case we have the undisputed testimony of the banker, who acted as notary public, of what occurred when all three parties were in the small room in his bank. His testimony, in brief, is that he was an entirely independent party, and received no pay from any one for executing the papers; that Mr. Holloway said that if they would give him a note, and also a mortgage on her undivided interest in her land near Hastings, he would let them stay another year; and the next day after these papers were signed he gave them a lease on the farm they were on for another year.

Witness said there were no threats made, and when he asked Mrs. Sheen, who signed the note and mortgage first, if it was her voluntary act and deed, she said, "Yes, sir," and everything seemed agreeable between the parties at the time the papers were executed.

In the instant case, repeated objections were seasonably made to every effort to draw from the defendant fraud-

ulent representations which she alleged in her answer were made by the deceased landlord to secure her signature. Each objection was sustained by the court under section 20-1202, Comp. St. 1929, and we see no error in such rulings. *Wright v. Wilds,* 124 Neb. 11; *Weber v. Crabill,* 123 Neb. 88; *Banking House of F. Folda v. Higgins,* 122 Neb. 279; 12 Neb. Law Bulletin, 282.

The defendant insists that this court has held in *Spelts & Klosterman v. Ward,* 2 Neb. (Unof.) 177, that when one is dealing with an illiterate party it is incumbent upon such party to prove that such illiterate fully understood the object and purport of the writing which was executed. Also, in *Farmers Bank v. Normand,* 3 Neb. (Unof.) 643, the plaintiff has the burden of proving that a married woman intended to bind her separate estate. However, in the case at bar the note itself contained the married woman's clause binding her estate. These two cases are both unofficial in the sense that they only determine the law in the case tried.

We are also cited to *First Nat. Bank v. Ernst,* 117 Neb. 34, holding to the same effect, and it is clear that in this case the note did not contain any clause showing her intention to bind her own estate.

In this case it is clear that they were several years behind with the rent on their farm, and both the husband and wife desired to remain another year. The landlord would not consent to it unless they cleaned up the past-due payments by a note and mortgage on her interest in her Adams county land.

In *Biltwell Tire & Battery Co. v. Book,* 112 Neb. 647, this court held:

"A married woman may bind her separate estate as surety for her husband, and the extension of the time of payment of her husband's past-due indebtedness is a sufficient consideration to support her contract as his surety for such debt.

"A married woman who joins with her husband in the execution of a promissory note which contains a clause by

which she expressly charges her separate estate with the payment of the note is bound by her contract to the same extent as if she were a *feme sole.*"

In the case at bar the trial court had the advantage of studying the few witnesses as they testified. His conclusions were dictated into the bill of exceptions and became a part of the record, and a portion thereof reads as follows:

"The evidence in this case, as far as it is competent, tends to show that the defendant in many ways was an illiterate person, but she could write her own name, and was not a person that could not understand an ordinary business transaction; or at least she could understand the ordinary affairs of life and affairs of business when they were explained to her.

"The court finds, first, that she is not so defective in mind that she cannot understand this transaction. The court finds that there is no evidence of fraud shown in this case."

We have carefully examined all of the errors set out for reversal, and find none of them prejudicial, and the decree of the trial court is hereby

AFFIRMED.