**ANDREADES v. McMILLAN.**

No. 4931.

Court of Civil Appeals of Texas. El Paso.

March 11, 1953.

Rehearing Denied March 25, 1953.

John B. Luscombe Jr., Fryer & Milstead, John H. Whitaker, Doyle H. Gaither, El Paso, for appellant.

478

Harold S. Long, El Paso, for appellee.

FRASER, Justice.

This is an appeal from the District Court of Hudspeth County, Texas. Inasmuch as appellee agrees with the appellant's statement of the nature of the case, the same is here included as it appears in appellant's brief:

This was a damage suit. Michael George Andreades brought suit against Hugh Mc-Millan, administrator of the estate of Charles N. Cummings, deceased, for damages arising out of personal injury to himself and to his wife, Chryssi Andreades, as the result of a collision between an automobile driven by plaintiff and an automobile driven by deceased. The Home Insurance Company filed a plea of intervention. Trial was before a jury on special issues. Verdict and judgment were for defendant. Plaintiff's motion for new trial was timely filed and was overruled by the court, at which time plaintiff excepted and gave notice of appeal.

Appellant complains of the trial court's action in refusing to allow the introduction of testimony by Michael George Andreades, plaintiff below and appellant here, as to the facts, circumstances and occurrences surrounding the collision between the automobile of plaintiff and that of the deceased, and likewise of the court's ruling to the same effect with reference to similar testimony proffered by Chryssi Andreades, wife of plaintiff. Appellant concedes in in his brief that if the testimony of appellant was inadmissible so also was that of his wife, Chryssi Andreades. We will therefore consider points one and two together.

As appears from the bills of exception, Mr. and Mrs. Andreades would each have testified that at the time of the accident, deceased Charles N. Cummings was driving his Chevrolet automobile in such a manner that the car was weaving from one side of the road to the other, and that said car when approximately one hundred yards in front of plaintiff's automobile suddenly crossed to the left, or the wrong side of the highway, and then veered to its right directly into plaintiff's vehicle. That the said Charles N. Cummings was unknown to them and was the driver of the car that collided with their automobile.

Defendant objected to this testimony as being in violation of Art. 3716, Vernon's Ann.Civ.St., which states as follows:

"In actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with, or statement by the testator, intestate or ward, unless called to testify thereto by the opposite party; and the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent."

It is difficult to explain either the source or the reasoning behind this statute. Beginning about 1400 the English law began to forbid and exclude the testimony of any witness who had an interest of any sort in the controversy. This strange interlude in the history of evidence, which assumed that every man who had as much as a farthing of interest in a lawsuit was a probable perjurer, was terminated by legislation beginning in 1843 and ending with Lord Brougham's Act of 1851. While this Anglo-Saxon history is not a proper precedent, some writers feel that the rule above stated is a surviving fragment of the old English point of view.

Several writers strongly disagree, as for example Prof. Wigmore states that the rule rests on superficial reasoning which offers as justification for the rule the protection of the estates of the dead. He states:

"Are not the estates of the living endangered daily by the present rule, which bars from proof so many honest claims? Can it be more important to save dead men's estates from false claims than to save living men's estates from loss by lack of proof?" Wigmore on Evidence, Vol. 2, 3d Ed., 696.

Prof. Wigmore refers to the work by Mr. Henry W. Taft, Law Reform, p. 79:

"* * * This restriction not infrequently works intolerable hardship in preventing the establishment of a meritorious claim. Furthermore, it has been enforced with the most rigorous literalness and has been the occasion of a labyrinth of subtle decisions. A long experience leads me to believe that the evils guarded against do not justify the retention of the rule. In the early development of our jurisprudence the testimony of all interested witnesses was excluded; but experience gradually led to the conclusion that the restriction should be relaxed and more reliance should be placed upon the efficacy of our process of investigating truth. Cross-examination, for instance, has been found to be well calculated to uncover a fraudulent scheme concocted by an interested party; and where that has failed, the scrutiny to which the testimony of a witness is subjected by the court and by the jury, has proven efficacious in discovering the truth, to say nothing of the *power of circumstantial evidence to discredit the mere oral statement of an interested witness.*"

McCormick, McCormick & Ray, p. 247, quotes Wigmore as follows:

"As a matter of policy, this survival of a part of the now discarded interest—disqualification is deplorable in every respect; for it is based on a fallacious and exploded principle, it leads to as much or more false decision than it prevents and it encumbers the provision with a profuse mass of barren quibbles over the *interpretation of mere words.*" (Emphasis ours.)

Mr. Wigmore sets out in detail a report of the committee of judges, practitioners and professors who carefully examined the workings under a Connecticut statute permitting such testimony, this report illustrating that the great majority of judges and lawyers who have had actual experience in trials where such testimony is admitted, were in favor of the admission of such testimony, and saw no harm from such procedure.

It might well be noted that in Oregon, New Mexico and Canada the rule is to allow recovery on the surviving party's sole testimony, provided there is corroboration of some sort. In Connecticut, Virginia and Oregon the rule is to admit the evidence of the surviving party and any extant writings or declarations of the deceased party on the subject at issue. Arizona follows the New Hampshire rule which is to exclude such testimony except when it "appears to the court that injustice may be done without the testimony of the party."

For further information on this matter: Vol. 5, T.L.R., p. 162, also 171–172; Vol. 30 Yale Law Journal, 593–605; Vol. 20 T.L.R., p. 665; McCormick & Ray, 236, 241, 246; Vol. 2, Wigmore on Evidence, 3rd Ed., Sec. 578–579; Yale University Press 1947, pp. 23, 25.

The Supreme Court of Texas, in the oft-cited case of Holland v. Nimitz, 111 Tex. 419, 232 S.W. 298, 299, 239 S.W. 185, has seemed to set the pattern and establish the law in Texas for the construction of this statute. The court in that case laid down the following rule:

"The words 'transaction with' as used in statutes similar to ours relating to the admissibility of transactions with decedents, have often received judicial interpretation, and have been held to include every method by which one person can derive impressions or information from the conduct, condition, or language of another." (And cases cited.)

Further on in said opinion the court stated:

"The object of the statute was to prohibit the interested heirs and legal representatives from testifying to any facts, or opinions, based upon observations, arising out of any transaction with the decedent which the decedent could, if living, contradict or explain. Death having sealed the lips of one of the parties, the law, for reasons founded upon public policy, seals the lips of the other."

The rule as laid down in this case seems to be the prevailing law in Texas on this point.

The Austin Court of Civil Appeals in the case of Armstrong v. Marshall, Tex. Civ.App., 146 S.W.2d 250, excluded the testimony of the defendant as to the circumstances surrounding his killing the son of plaintiff and wife, on the ground that such was inadmissible under the inhibitions of Art. 3716.

In the case of International Travelers Ass'n v. Bettis, 120 Tex. 67, 35 S.W.2d 1040, the testimony of a son seeking to narrate details of his deceased father's injury was ruled inadmissible by the Supreme Court.

This brief history of and comment upon the rule of law will perhaps serve to indicate why courts have had so much difficulty with its application and construction. However, it is one of our statutes, and as such it is the law and our present problem lies in its interpretation by Texas courts. Here we find some writers in open and articulate disagreement with the cases above cited. Prof. McCormick (McCormick & Ray, Texas Law of Evidence, 236) states:

"One would likewise suppose that 'transaction with' implied a bilateral act in which there was some actor other than the decedent. But in Holland v. Nimitz the Supreme Court has held that the phrase excludes testimony as to unilateral acts and conduct of a decedent. This result appears open to question as being an unwarranted judicial extension far beyond what the Legislature could have intended."

Again, on page 241, Prof. McCormick states:

"And the Supreme Court has gone so far as to hold that the evidence is not admissible even though it is based solely on the witness' observation of the acts and conduct of the testator, and is not in any way the result of conversations with or statements by the testator. This result appears unsustainable and has been criticized in an earlier section. *Certainly the unilateral observation of the witness cannot be termed a transaction with deceased in any accepted use of the term.*" (Emphasis ours.)

Maurice Cheek, distinguished member of the Texas bar, writing in Texas Law Review, Vol. 5, p. 162, referring to Holland v. Nimitz, says:

"At least one case has interpreted the term to prohibit testimony as to unilateral acts and conduct of the decedent. This is obviously a *judicial extension*, (emphasis ours) since testimony as to the sole acts and conduct of another, in which the only role played by the witness is that of an observer, cannot fairly be said to be testimony as to a *transaction* with such other."

■ While we here have some grave doubts that the judicial extension of Art. 3716 as set forth in Holland v. Nimitz ought to include the facts of the case at bar, we feel constrained by the language of the above cases to so hold. We therefore necessarily hold that the testimony offered and excluded in the present case was inadmissible, and sustain the ruling of the trial court.

There being no error in the action of the trial court, appellant's two points are accordingly overruled and the decision of the trial court affirmed.