In re Estate of Herbert G. Mueller, deceased. Merle H. Fincham, Jr., by Merle H. Fincham, Sr., his father and next friend, appellant, v. Wilbert L. Mueller, Administrator of the Estate of Herbert G. Mueller, deceased, appellee.

89 N. W. 2d 137

Filed April 4, 1958. No. 34304.

*Richards, Yost & Schafersman,* for appellant.

*Spear, Lamme & Simmons,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an appeal from the district court for Dodge County. The cause of action appealed had its origin in the county court of Dodge County when, on March 6, 1956, Merle H. Fincham, Sr., as next friend and father of Merle H. Fincham, Jr., filed a claim in his son's behalf against the estate of Herbert G. Mueller, deceased, then being probated therein, for damages which he claims Merle H. Fincham, Jr., suffered as a result of injuries received in an accident which is it claimed was caused by the negligent conduct of Herbert G. Mueller. The county court disallowed the claim and an appeal was taken therefrom to the district court for Dodge County. A trial was had and, at the conclusion of plaintiff's (claimant's) evidence, the trial court sustained defendant's motion for a directed verdict and dismissed plaintiff's petition. Plaintiff thereupon filed

a motion for new trial and this appeal was taken from the overruling thereof.

The basic facts as to the accident in which Merle H. Fincham, Jr., whom we shall hereinafter refer to as the son, was injured are not in dispute. The accident happened about 12:05 p.m. on Saturday, October 29, 1955, in a county road intersection located about 6½ miles north and slightly west of Ames, Nebraska. At the time of the accident Merle H. Fincham, Sr., whom we shall hereinafter refer to as the father, was driving his 1955 Chevrolet station wagon with his son, who was then 8 years of age, as his guest. He was driving from Ames, Nebraska, to Snyder, Nebraska, on business and, at the time, was proceeding in a northerly direction. At this same time Herbert G. Mueller, whom we shall hereinafter refer to as decedent, was driving his 1954 Chevrolet sedan in an easterly direction toward the intersection wherein the accident occurred. The traveled portion of both the east-west and north-south roads were graveled to a width of some 18 to 20 feet, travel being generally down the center of the graveled part thereof. At the intersection, and for a distance of some 100 to 150 feet to the west and south thereof, the road was quite level, however, further on it sloped downgrade to the south and upgrade to the west. At the southwest corner of the intersection, and extending to the west therefrom, were trees, bushes, and grass. The trees and bushes still carried their foliage. These trees, bushes, and grass came fairly close to the southwest corner and, because thereof, substantially obstructed the vision of the drivers of cars coming from either the west or south to see cars coming toward the intersection on the other of these two roads. The weather was cold, windy, and somewhat cloudy, but the road was dry. The debris from the impact of the car and station wagon, which consisted of chrome from the grille and glass from the parking lights and headlights of the station

wagon, indicates the collision took place at about the center of the intersection, and the damage to the vehicles indicates that the front of the station wagon hit the right side of the sedan at about the center thereof. As a result of the impact the sedan rolled over and came to rest on its top in the ditch on the north side of the east-west road and just to the east of the intersection. It was facing northwest when it came to rest but more west than north. The front end thereof was some 43 feet from the center of the intersection. The driver thereof, Herbert G. Mueller, was killed. The station wagon continued on north after the impact, coming to a stop with the front end, which was facing north, some 47 feet 8 inches from the center of the intersection. It stopped to the east of the graveled portion of the north-south road and just out of the intersection. It was facing generally north but slightly to the northwest. As a result of the accident the son was injured.

As a basis for recovery it is claimed that decedent was negligent in the following respects and that such conduct on his part was the proximate cause of the accident and the resulting injuries to the son, to wit:

"(a) In driving his car at a high and dangerous rate of speed and at a rate of speed greater than was reasonable and proper and not having any regard for the traffic and conditions of the road, to-wit: 60 miles per hour.

"(b) In failing to have his car under proper control.

"(c) In failing to keep a proper look-out for other traffic upon said roads and in particular, for traffic to his right at the intersecting County road.

"(d) In failing to yield the right-of-way to the automobile in which this plaintiff was riding, said automobile being on his right.

"(e) In failing to yield the right-of-way to the automobile in which this plaintiff was riding, the same being the first in said intersection.

"(f) In failing to apply his brakes in time to avoid

colliding with the automobile in which the plaintiff was riding."

There is no question here of imputed negligence as the son was riding as a guest of his father.

There are three questions raised by appellant: First, did the trial court err in holding that the father and next friend had a direct legal interest in the suit within the meaning of section 25-1202, R. R. S. 1943? Second, if so, was he barred from testifying as to the acts of the decedent driver and of himself in regard to the operation of their respective vehicles immediately before and at the time of the collision? And third, did the trial court err in directing a verdict at the conclusion of appellant's case?

It is apparent that the trial court applied section 25-1202, R. R. S. 1943, to certain testimony of the father. He excluded all the testimony of the father, which was properly offered, as to what he observed as to decedent's car but, with some exceptions, permitted him to testify in regard to his own vehicle and his operation thereof. Since the question presented has never been passed on by this court, and is now properly before us, we will consider the matter of whether or not an automobile accident can be said to be a transaction within the meaning of the statute.

Section 25-1202, R. R. S. 1943, insofar as here material, provides: "No person having a direct legal interest in the result of any civil action or proceeding, when the adverse party is the representative of a deceased person, shall be permitted to testify to any transaction or conversation had between the deceased person and the witness, * * *."

Section 25-308, R. R. S. 1943, provides: "The guardian or the next friend is liable for the costs of the action brought by him, and, when he is insolvent, the court may require security for them. Either may be a witness in an action brought by him."

In Kleffel v. Bullock, 8 Neb. 336, 1 N. W. 250, we held:

"In this state, the action of an infant must be brought by his guardian or next friend, who alone is liable for the costs. The infant is not liable to a judgment therefor." See, also, §§ 25-307 and 25-308, R. R. S. 1943.

"One who has a direct legal interest in the result of a cause, in which the adverse party is administrator of a deceased person, is not a competent witness therein; liability for the costs of the action is such an interest." Ransom v. Schmela, 13 Neb. 73, 12 N. W. 926. See, also, Smith v. Perry, 52 Neb. 738, 73 N. W. 282; In re Estate of Jelinek, 146 Neb. 452, 20 N. W. 2d 325.

In Tecumseh Nat. Bank v. McGee, 61 Neb. 709, 85 N. W. 949, we quoted with approval the following from Kroh v. Heins, 48 Neb. 691, 67 N. W. 771, that: "A direct legal interest in the event of an action disqualifies a witness from testifying to transactions or conversations with the deceased, whether such interest be great or small."

Under these holdings it becomes self evident that the father, being liable for the costs, had such a direct legal interest in the result of the action as to bring him within the provisions of section 25-1202, R. R. S. 1943, provided the factual situation involved comes within the scope thereof.

It is further contended that the last sentence of section 25-308, R. R. S. 1943, makes the guardian or next friend bringing such suit exempt from the provisions of section 25-1202, R. R. S. 1943. It is a little difficult to understand this reasoning. At common law all parties to a suit were incompetent as witnesses. See, Wright v. Wilson, 154 F. 2d 616, 170 A. L. R. 1237; Hallowach v. Priest, 113 Me. 510, 95 A. 146; Shaneybrook v. Blizzard, 209 Md. 304, 121 A. 2d 218; Andreades v. McMillan (Tex. Civ. App.), 256 S. W. 2d 477; McCormick on Evidence, § 65, p. 142. As stated in Wright v. Wilson, *supra*: "At common law both the parties to a suit were incompetent as witnesses on the ground of interest." The common law, with certain limitations, is the law of this

state. See § 49-101, R. R. S. 1943. To avoid the effect of this common law rule our original code of civil procedure (§ 328, R. S. 1866) and present law (§ 25-1201, R. R. S. 1943) provide, with certain exceptions therein enumerated, that: "Every human being of sufficient capacity to understand the obligation of an oath, is a competent witness in all cases, civil and criminal, * * *." Apparently it was to make certain this common law rule would not apply to the guardian or next friend who was bringing a suit under section 25-307, R. R. S. 1943, that caused the Legislature to add the last sentence to section 25-308, R. R. S. 1943. Sections 25-307 and 25-308, R. R. S. 1943, were also a part of our original code of civil procedure. We find that the last sentence of section 25-308, R. R. S. 1943, is not intended to avoid the effect of section 25-1202, R. R. S. 1943, when the latter is applicable to a guardian or next friend bringing a suit pursuant to section 25-307, R. R. S. 1943.

In addition to the exceptions contained in section 25-1201, R. R. S. 1943, to the general rule that every human being of sufficient capacity to understand the obligation of an oath is a competent witness in all cases, there is the exception contained in section 25-1202, R. R. S. 1943. The purpose of the exception contained in section 25-1202, R. R. S. 1943, which is a statutory provision common to many states that have adopted the common law of England, has been well stated in Krause v. Emmons, 29 Del. 104, 97 A. 238, as follows: "The purpose of the Legislatures in passing statutes of this kind is equality. In this state the intention was to prevent both parties, unless called as a witness by the opposite party, giving testimony of transactions with or statements by the deceased, concerning which the deceased, if living, could of his own knowledge contradict, corroborate or explain." And, as stated in Newman v. Tipton, 191 Tenn. 461, 234 S. W. 2d 994: "All the cases from all jurisdictions hold that the statute was primarily intended to guard against an evil which might result from testimony

of the living against the dead; that death having silenced the one, the law silences the other." See, also, Strode v. Dyer, 115 W. Va. 733, 177 S. E. 878; Boyd v. Williams, 207 N. C. 30, 175 S. E. 832; VanMeter v. Goldfarb, 317 Ill. 620, 148 N. E. 391, 41 A. L. R. 343; Maciejczak v. Bartell, 187 Wash. 113, 60 P. 2d 31; 97 C. J. S., Witnesses, § 132b, p. 558.

It will be noted, insofar as here material, that our statute relates itself to "any transaction * * * had between the deceased person and the witness." We said, in Wilson v. Wilson, 83 Neb. 562, 120 N. W. 147, that: "The word 'transaction,' as used in this section, embraces every variety of affairs, the subject of negotiations, actions, or contracts between the parties."

Black's Law Dictionary (3rd Ed.), p. 1747, as it relates to this subject, defines the word "transaction" as follows: "A 'transaction' between a witness and a decedent, within statutory provisions excluding evidence of such transactions, embraces every variety of affairs which can form the subject of negotiations, interviews, or actions between two persons, and includes every method by which one person can derive impressions or information from the conduct, condition, or language of another."

And in VanMeter v. Goldfarb, *supra,* quoting from Barnett's Admr. v. Brand, 165 Ky. 616, 177 S. W. 461, the court said: " 'The word "transaction" as used in the statute relating to the admissibility of evidence of transactions or communications with deceased persons, has often received judicial interpretation, and is held to mean every variety of affairs which forms the subject of negotiations or actions between the parties.' " See, also, Krause v. Emmons, *supra;* Maciejczak v. Bartell, *supra.* As stated in Krause v. Emmons, *supra:* "In general terms a transaction, within the terms of the statute, may be said to be an occurrence or action of which both decedent and the other party had knowledge, and to which the decedent if living would be equally

qualified to testify with the other party."

Bearing in mind this definition of "transaction," courts generally hold that statutes, such as ours, apply to tort actions as well as those arising out of contract. See, Maciejczak v. Bartell, *supra;* Newman v. Tipton, *supra;* Strode v. Dyer, *supra;* Hallowach v. Priest, *supra;* Southern Natural Gas Co. v. Davidson, 225 Ala. 171, 142 So. 63; Boyd v. Williams, *supra;* Wright v. Wilson, *supra*; 3 Jones on Evidence (4th Ed.), § 774a, p. 1412; 97 C. J. S., Witnesses, § 133a, p. 564; Annotation, 36 A. L. R. 959. As stated in Hallowach v. Priest, *supra:* "The statute makes no distinction between actions of contract and actions of tort. Nor do we think there is any distinction in reason. The statutory policy that living parties should not be permitted to tell their stories when the lips of adverse parties are sealed by death applies with equal force to torts and contracts. In torts, as in contracts, all the parties ordinarily are cognizant of the circumstances attending the tort. And if by reason of death some of them cannot testify, the others should not. That is the policy of the statute."

We said in Nelson v. Janssen, 144 Neb. 811, 14 N. W. 2d 662, that: "A transaction or conversation, within the meaning of the statute, is an action participated in by witness and decedent and to which the decedent could testify of his own personal knowledge, if alive." See, also, In re Estate of House, 145 Neb. 866, 18 N. W. 2d 500, 159 A. L. R. 401; Hlavaty v. Blair, 101 Neb. 414, 163 N. W. 330. It would, of course, have no application to independent acts performed in which decedent did not participate and to which, because thereof, he could not have testified of his personal knowledge. Bosteder v. Duling, 115 Neb. 557, 213 N. W. 809. See, also, Newman v. Tipton, *supra.*

While the question here presented has not been passed on by this court it has received the attention of numerous other state and federal courts. There are apparently three viewpoints as to the effect of such a statute under

comparable situations. The majority view is that the survivor cannot testify either as to his own actions or those of decedent. See, Southern Natural Gas Co. v. Davidson, *supra*; Andreades v. McMillan, *supra*; Stephens v. Short, 41 Wyo. 324, 285 P. 797; Miller v. Walsh's Admx., 240 Ky. 822, 43 S. W. 2d 42; VanMeter v. Goldfarb, *supra*; Wright v. Wilson, *supra*; Maciejczak v. Bartell, *supra*. As stated in Southern Natural Gas Co. v. Davidson, *supra*: "* * * the test is that it relates to some personal dealings whether others have an equal opportunity to see and observe or not. The concurring conduct of the participants constituting the res gestae of a personal conflict or encounter between them has been held to be a transaction within the effect of such a statute. * * * The conduct of Ed Green constituting that which is alleged to have been negligent and a breach of duty to plaintiff causing his injuries and damage, which occurred in his presence, and a part of the res gestae of such negligent conduct was of the nature of personal dealings with plaintiff under the rule, and constituted a 'transaction' within the meaning of our statute."

And as stated in Miller v. Walsh's Admx., *supra*: "The speed and movement of the truck, the sounding of the horn, and all that Gentner observed and did, as well as the movements of the deceased, were so closely related to, and inseparably connected with, the accident as to bring them within the knowledge or observation of the deceased, make them a necessary part of the accident, and thus constitute a transaction with the deceased. As the offered evidence concerned a transaction with the deceased, there can be no doubt that, under the Code, Gentner, who was a party defendant, was not a competent witness on his own behalf."

Footnote 21, p. 619, to Wright v. Wilson, *supra*, quotes and states as follows: "2 Wigmore on Evidence, 3rd Ed., § 578 'The scope of this modern rule excludes the testimony of the survivor of a transaction with a decedent, when offered against the latter's estate.' The note

to this adds '* * * the jurisdictions not recognizing this disqualification are half a dozen only.'"

There are some cases that hold the survivor is permitted to testify as to his own actions but not as to those of the decedent. See, Kilmer v. Gustason, 211 F. 2d 781; U. S. A. C. Transport v. Corley, 202 F. 2d 8; McCarthy v. Woolston, 210 App. Div. 152, 205 N. Y. S. 507. We can see no logical reason for such a holding for if the factual situation brings it within the statute then the statute necessarily excludes all of the testimony relating thereto.

There is a third view to the effect that the survivor can testify both as to his own actions and those of the decedent. See Rankin v. Morgan, 193 Ark. 751, 102 S. W. 2d 552. Of the cases cited by the parties under this holding we have found only this one to be squarely in point on both fact and statute. It holds that: "A collision and incidents connected therewith are not transactions with the testator or intestate as the case may be." It is significant to note that the opinion recites: "The parties have favored us only to the extent that they have stated the issue without furnishing citations to authorities supporting their respective contentions." It is apparent that the court did not make any research therefor as the opinion cites none of the numerous cases of other jurisdictions that have dealt with the question.

We have come to the conclusion that the factual situation here presented is a "transaction" within the meaning of section 25-1202, R. R. S. 1943, and that the disqualification provided for by the statute had application to the testimony of the father.

We have not overlooked certain cases cited by the parties such as Turbot v. Repp, 247 Iowa 69, 72 N. W. 2d 565; Shaneybrook v. Blizzard, *supra;* Krantz v. Krantz, 211 Wis. 249, 248 N. W. 155; Boyd v. Williams, *supra;* Davis v. Pearson, 220 N. C. 163, 16 S. E. 2d 655; Strode v. Dyer, *supra.* In these cases the courts are divided on the question of whether or not a factual situation,

such as here presented, can be said to come within the scope of the statute therein involved. In each of these cases the statute involved had additional qualifications to the word "transaction," such as: "to any *personal* transaction * * * between such witness and deceased person," or "to any transaction had with * * * (decedent) * * * *personally*," or "to any transaction * * * by him *personally* with a deceased * * * person," or "in regard to any *personal* transaction," or *"personal* transaction." (Emphasis ours.) Because thereof we do not think opinions dealing therewith can properly be said to relate themselves as authority for the construction of a statute such as ours or to opinions of the majority view wherein they were dealing with statutes relating only to "transactions."

In this respect we have not overlooked the following language originally appearing in Harnett v. Holdrege, 5 Neb. (Unoff.) 114, 97 N. W. 443, and subsequently quoted in In Estate of House, *supra:* "Under our present statute, to require the evidence of an interested party to be excluded, it must appear that the testimony relates to something of a personal nature passing between the witness and the deceased." However, a careful analysis of these two opinions discloses that this statement is not the basis for the decision therein arrived at on this issue and therefore merely dicta.

In Harnett v. Holdrege, *supra,* the action involved was on the two notes brought by the trustee of a trust created by the last will and testament of Hannah S. Allen, deceased. Service was had on three of the defendants charged as being indorsers on these notes. They appeared therein and answered, alleging the notes had been materially altered after they had signed them as indorsers. At the trial two of these indorsers, Foss and Dewesse, were permitted to testify as to the condition of the notes at the time they indorsed them, which was in the absence of the deceased. On appeal the question was raised as to whether or not this evidence was

competent under the statute herein involved. In passing on the question of the competency thereof, in view of the factual situation and the statute, the court held: "In Kroh v. Heins, 48 Neb., 691, we held that section 329 of the Civil Code does not apply where the transaction or conversation was not between the witness and the deceased person, but between the latter and a third party, in which the witness took no part. This case seems to be directly in point. It does not appear that the defendants, or either of them, ever saw the deceased, or that they ever transacted any business with her or ever had any conversation with her about the notes in suit. It follows that their evidence was competent, and was properly received."

In In re Estate of House, *supra,* a claim was filed against the estate of Merton E. House, deceased, based on a promissory note. Claimant was permitted to identify the signature of the deceased, having qualified as being familiar therewith. Passing on the question of the competency thereof, in view of the statute, the court held: "A majority of the courts hold generally that an interested party is competent, if otherwise qualified, to testify to the genuineness of the signature or handwriting of a deceased person, notwithstanding the statutory rule excluding transactions or conversations with a decedent, since such testimony involves a matter of opinion and not a personal transaction or conversation between the witness and decedent."

In In re Estate of House, *supra,* the author cites the rule here applicable and which we have hereinbefore set forth. It is as follows: "A transaction or conversation within the meaning of section 7894, Rev. St. 1913, (now sec. 25-1202, R. S. 1943), is an action participated in by witness and decedent and to which, if alive, decedent could testify of his personal knowledge." Hlavaty v. Blair, *supra.* This principle carries out the purpose of our statute which is well stated in 97 C. J. S., Witnesses, § 132b, p. 558, as follows: "The purpose of the

dead man statutes is to prevent injustice and fraud, and to put the parties on equal terms."

It is interesting to note that originally our statute was much broader in its scope. Laws 1866, part II, § 329, p. 449. Therein it provided that: "* * * nor shall any person having a direct legal interest in the result of any civil cause or proceeding, be a competent witness therein, when the adverse party is an executor, administrator or legal representative of a deceased person." Our present statute, which materially limited the former code provision, was enacted by the Legislature in 1883. See Laws 1883, c. 83, § 1, p. 328. The effect of the change is stated in Sharmer v. McIntosh, 43 Neb. 509, 61 N. W. 727, as follows: "But this section was amended (Session Laws, 1883, ch. 83,) so as not to render the person interested adversely to the representative of the deceased person incompetent as a witness, but to render merely his testimony as to transactions and conversations with the deceased incompetent as evidence, with the exceptions provided in the act."

This is a subject the Legislature has dealt with from the state's very beginning. If the present statute is still too severe it can be dealt with by the Legislature and made more liberal but we do not think that should be done by judicial opinion for such would be judicial legislation. In some states the legislatures have done so. See, McCormick on Evidence, § 65, p. 143; Andreades v. McMillan, *supra*. As stated in Strode v. Dyer, *supra:* "Whatever may be our views on the policy of the West Virginia statute as interpreted herein, we believe the change, if any, should be made by the legislature." And in Wright v. Wilson, *supra,* the court speaking on the same question, said: "The rule excluding a survivor's testimony seems to stand in the almost unique situation of being condemned by all of the modern writers on the law of evidence. It is said to be as unsound and undesirable as the rule excluding the testimony of parties of which the survivor rule is a part. But we believe

this to be a case where a rule so thoroughly established through many generations of judicial history should be removed by legislative action * * *." If the Legislature should amend the present act so as to relate it to "personal transactions" or "transactions had personally with the deceased" we can then properly determine whether or not a transaction, such as here, would come within the scope thereof.

Having come to the conclusion that the father should not have been permitted to testify as to either his own actions or those of the decedent as it relates to their vehicles immediately before and at the time of the accident the question arises, is the trial court's order directing a verdict for the appellee, and dismissing appellant's petition, in error?

In considering this question the appellant is entitled to the benefit of the following principles:

"A motion for a directed verdict or its equivalent must be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed, and such party is entitled to have every controverted fact resolved in his favor and have the benefit of every inference that can reasonably be deduced from the evidence." Behrens v. Gottula, 160 Neb. 103, 69 N. W. 2d 384.

"Negligence is a question of fact and may be proved by circumstantial evidence. All that the law requires is that the facts and circumstances proved, together with the inferences that may be legitimately drawn from them, shall indicate, with reasonable certainty, the negligent act complained of." Davis v. Dennert, 162 Neb. 65, 75 N. W. 2d 112.

But, of course, negligence is never presumed. The burden of proving negligence is on the party alleging it and merely establishing that an accident happened does not prove it. Wolcott v. Drake, 162 Neb. 56, 75 N. W. 2d 107. Nor can a verdict be based on conjecture or

surmise. Bowers v. Kugler, 140 Neb. 684, 1 N. W. 2d 299. As stated in Price v. King, 161 Neb. 123, 72 N. W. 2d 603: "Negligence must be proved by direct evidence or by facts from which such negligence can be reasonably inferred. In the absence of such proof, negligence cannot be presumed." Nor can the presumption raised by the instinct of self preservation benefit the appellant for such would also be in favor of the decedent. Wolcott v. Drake, *supra*.

In addition to the factual situation already set forth the only addition that need be added thereto is that the state trooper, who was at the scene of the accident very shortly after it happened, testified he saw skid marks in the gravel made by the tires of the station wagon extending back from the rear thereof south for a distance of some 17 to 18 feet. He testified the tracks started at the rear end thereof from the point where the station wagon hit the car. He also testified he could find none to the west of the point of impact, that being the direction from which the sedan had come.

We turn then to the six specifications of negligence alleged by the appellant, which we have hereinbefore set out. There is no evidence in the record from which the speed of decedent's car, or how it was operated, can be ascertained. Consequently there is no evidence to support specifications (a), (b), (c), and (f). Specifications (d) and (e) deal with appellant's alleged claim of right-of-way and the rules applicable thereto as set forth in Wolfe v. Mendel, 165 Neb. 16, 84 N. W. 2d 109. However, appellant did not necessarily have the right-of-way merely because he approached the intersection from the right for if decedent entered the intersection first then he would have had the right-of-way. See Long v. Whalen, 160 Neb. 813, 71 N. W. 2d 496. To permit the jury, under the factual situation presented, to decide who had the right-of-way would require it to guess in regard thereto as there is no evidence on which to properly base a conclusion on that issue. The same

would be true as to the other claims of negligence, since any conclusion in regard thereto would have to be based solely on the physical facts established. We do not think they are sufficient for that purpose. See, Wolcott v. Drake, *supra;* Ulrich v. Batchelder, 143 Neb. 697, 10 N. W. 2d 637; Bowers v. Kugler, *supra.*

In view of what we have herein held we come to the conclusion that the trial court's ruling, holding that appellant has not made a case, is correct. We therefore affirm the action of the trial court in dismissing appellant's petition.

AFFIRMED.

CARTER, J., dissenting.

I disagree with that part of the majority opinion holding that the conduct of the operators of motor vehicles prior to a collision, the location and speed of such vehicles, and the physical facts existing at the scene of an accident, constitute a transaction within the meaning of the dead man's statute.

The word transaction as used in the dead man's statute means a personal transaction with the deceased, as this court has heretofore indicated. See, Harnett v. Holdrege, 5 Neb. (Unoff.) 114, 97 N. W. 443; Fitch v. Martin, 74 Neb. 538, 104 N. W. 1072; In re Estate of Baker, 144 Neb. 797, 14 N. W. 2d 585, 155 A. L. R. 950; In re Estate of House, 145 Neb. 866, 18 N. W. 2d 500, 159 A. L. R. 401. It means a transaction in which each is an active participant; a mutual transaction between the deceased and the surviving party. It does not prohibit the survivor from describing an event or physical situation, or the movement or actions of a deceased person, quite independent and apart, and in no way connected with, or prompted or influenced by reason of, the conduct of the party testifying. Thus construed, the dead man's statute does not bar the testimony of the survivor as to his observation and description of the physical situation, and the movements and actions of the participants at the time of the accident.

While there is a division of authority on the subject, I am of the opinion that the following cases support the better rule: Shaneybrook v. Blizzard, 209 Md. 304, 121 A. 2d 218; Seligman v. Hammond, 205 Wis. 199, 236 N. W. 115; Krantz v. Krantz, 211 Wis. 249, 248 N. W. 155; McCarthy v. Woolston, 210 App. Div. 152, 205 N. Y. S. 507; Rankin v. Morgan, 193 Ark. 751, 102 S. W. 2d 552; In re Estate of Talty, 232 Iowa 280, 5 N. W. 2d 584, 144 A. L. R 859; Krause v. Emmons, 29 Del. 104, 97 A. 238; U. S. A. C. Transport v. Corley (Ga.), 202 F. 2d 8; Kilmer v. Gustason (Fla.), 211 F. 2d 781. Independent acts have never heretofore been held to be within the dead man's statute by this court. See, Larson v. Swingley, 105 Neb. 116, 179 N. W. 303; Bosteder v. Duling, 115 Neb. 557, 213 N. W. 809.

The majority places a broad and unlimited meaning on the word transaction. The dead man's statute, section 25-1202, R. R. S. 1943, is an exception to the general statute, section 25-1201, R. R. S. 1943, stating who is competent to testify as a witness. The exception ought to be strictly construed. It ought not to be given the broadest definition that can be found. Statutes which have the effect of limiting the evidence in a judicial hearing to something less than all the available evidence should be most narrowly construed. This, for the reason that justice will not ordinarily prevail where only a part of the available evidence affords the only support for the judgment rendered.

CHAPPELL, J., concurs in this dissent.